144 P.2d 165

## VILLAGE OF SPRINGER v. SPRINGER DITCH CO.

### No. 4762.

Supreme Court of New Mexico.

Dec. 20, 1943.

F. S. Merriau, of Raton, for appellant.

Fred C. Stringfellow, of Raton, and Daniel W. Caldwell, of Springer, for appellee.

MABRY, Justice.

In the year of 1929 there was pending in the district court of Colfax County, New Mexico, a statutory proceeding to adjudicate water rights of the Cimarron River system, numbered 5054 on the docket of said court and entitled the Springer Ditch Co., a corporation, et al., v. the French Land & Irrigation Co., a corporation, et al., and on the 20th day of December, 1929 a final decree was entered therein. Among the water rights adjudicated were those of the village of Springer, a New Mexico municipal corporation, and the Springer Ditch Co., a domestic corporation.

The present proceeding was initiated by the village of Springer (hereinafter called relator) by the filing of a petition in this original cause, No. 5054, for the purpose of enforcing as against the Springer Ditch Company (hereinafter called respondent) the delivery to the said village of Springer water in the amount of 450 acre feet annually, this being the water alleged to have

been awarded and allotted to it by the final decree in the cause as of the date of December 20, 1929.

Aside from a determination, as a question of law, of the issue as to whether the said village of Springer, by virtue of this 1929 decree, was given, and thereafter at all times possessed, a separate water right distinct and apart from that to which it would be entitled as the owner of shares of stock in respondent company, the carrier and distributor, and other issues hereinafter to be noticed, there has been injected the jurisdictional question of whether the trial court had a right to proceed in a determination of any of the issues now presented by the petition and decided in favor of relator, and from which, this appeal arises.

The stipulated facts upon which the trial court's decision rests will first be noticed.

On the 20th day of December, 1929, a final decree was entered in cause No. 5054 entitled the Springer Ditch Co. et al. v. French Land & Irrigation Co., a corporation, et al. The water right of relator was either adjudicated directly, as to it, and without reference to the employment of respondent, the Springer Ditch Company, as the agent for carriage and distribution, as it contends, or the decree affects it only as its water rights so decreed relate to, and are tied up with, the adjudication of the larger right in respondent.

It is unnecessary to set out in any detail the history of the litigation and the particular water rights adjudicated in cause No. 5054, under the very elaborate decree of December, 1929; but a brief notice should be taken thereof. Respondent makes no attack upon the decree of 1929 and it makes no objections to relator's claim of an award of 450 acre feet water right to the village of Springer, but it contends that this right, in order to be fully served, must, of necessity, be supported by the ownership of sufficient stock in the carrier, the respondent company, as provided by its by-laws, in order to serve such water right. That is, respondent seems not to contend that relator did not receive a specific award of 450 acre feet of water by the 1929 decree, but says that the enjoyment of its use is conditioned upon the ownership of stock in the respondent company and obedience to the rules governing that company's method of distribution.

The village of Springer is a municipal corporation situated in Colfax County, New Mexico, and is the same municipal corporation designated "Town of Springer" in the decree entered in the original proceeding in Cause No. 5054. The ditch system of the Springer Ditch Co., which at all times has served the village of Springer (originally owned by the Maxwell Land Grant Co.), was completed and actual irrigation was begun thereunder in 1889.

The first of such water used by the village of Springer was delivered to it in 1892 through respondent's ditches under a water right certificate from the Maxwell Land Grant Company, the then owner.

The respondent company was incorporated in 1908 and succeeded by purchase to all the rights of the Maxwell Land Grant Co. in the Springer Ditch system, and, as one of the considerations for its purchase assumed the responsibility of delivering through its ditch system the water to which the village of Springer was entitled.

The rights of the village of Springer, as other water users, have at all times been limited to a pro-rata share of the water available for distribution through the Springer Ditch system, and by the quantity of water represented by their respective water right certificates.

Respondent, the Springer Ditch Company, was incorporated in 1908, taking over the functions of the distribution of water through this ditch system from its predecessors. Certificates of stock of par value of $10 were issued, entitling the holder or holders thereof to the use of certain amounts of water, limiting its own liability for water shortage providing for prorating equally the available water supply on the basis of all outstanding capital stock; and providing that any surplus over and above that required to satisfy the rights of stockholders might be sold by the corporation. No objection appears from the record to have been heretofore made that such arrangements and the method of distribution were not proper and according to the respective rights of the parties.

In the trial of the cause upon which the decree of 1929 rests there was introduced in evidence, without objection, a statement showing the ownership of respondent's capital stock, of which relator then owned 315 shares. It now owns 329.7 shares. The relator has regularly paid assessments levied upon its stock and has regularly participated in the meetings of the stockholders of respondent since its purchase of stock in 1916.

Since respondent was organized in 1908, holders of its capital stock, including the relator, have received a pro-rata share of the water available and distributed by the respondent on the basis of the number of shares held by each, and according to the by-laws of the company, and no stockholder, including relator, has at any time received more than a pro-rata share of the water available for distribution, based upon the capital stock owned, except in cases where individuals have purchased additional water. The amount of water actually received by relator since the entry of the original decree has, because of shortage in which all shared, been less than the 450 acre feet annually allotted to it by the terms of the decree.

Relator contends, incidentally, that in neither the original transcript nor the supplemental one later brought in upon motion for diminution does there appear enough of the proceedings officially certified to, to permit this court to intelligently rule upon the matters now urged as error. In this we do not agree. We are not persuaded that any irregularity in presenting, or insufficiency of, the record in this respect supports relator's contention. There is enough prop-

erly before us for the purpose of determining the questions necessary to be here noticed.

From the above facts, given in substance and so far as pertinent, the trial court in the hearing upon the petition, concluded as follows:

"That under the terms of the decree, (in Cause No. 5054) the Springer Ditch Company was awarded a water right of 5,550 acre feet of water for the irrigation of 7,500 acres of land which water right was appurtenant to the lands described in said action and that the Town of Springer was awarded the water right of 450 acre feet for its municipal usages and purposes and that said water rights were adjudged to have a priority as of the year 1887.

"That the award of said 450 acre feet of water each year to the Town of Springer was an absolute award of that amount to be delivered to the Town reservoir by the Springer Ditch Company through its system and of the water of the Cimarron River and its tributaries, if and when available from the intake canal of said company, and so long as the furnishing of said quantity of water will not impair the rights of other users of water from said system who have equal priority, and that said award was not based on the number of shares of stock held in the Springer Ditch Company by said town of Springer, and that said water right does not depend upon the ownership of said stock in the said Springer Ditch Company, having therefor and in the earlier decree of 1929 been awarded an absolute distinct water right from the waters of the Cimarron River and its tributaries was entitled to receive its allotment of 450 acre foot per annum, with restrictions and conditions that other water users with equal priority should suffer no impairment. of their rights," etc.

The relator's petition in the case at bar, filed in the original case, was for the alleged purpose of securing an order for the enforcement of the decree in that case in which it had been determined that the village of Springer was entitled to the use of 450 acre feet of water annually, as of the date of the first appropriation in 1887, conceding that its right must be apportioned if the amount of water diverted into the ditch system for any one year should be less than the first total appropriation of 5550 acre feet. Enough of that portion of the decree affecting the rights of the parties hereto was attached to the petition as an exhibit. It was stated, in the petition, that unless the court ordered the respondent to deliver the 450 acre feet of water the respondent would refuse to so deliver. The prayer was "That an order of this court issue requiring respondent to show cause, if any it has, why it should not be required to deliver the water to the petitioner in the amount adjudicated to it in said decree."

The district court in the original suit, for awhile and until the year 1932 retained jurisdiction for the purpose of distributing the water according to the terms of its decree, and numerous administrative orders were made and entered from time to time.

This jurisdiction (if indeed the court had authority to retain it in the first instance a question we do not decide) was subsequently renounced however and the case finally closed long before this proceeding was instituted.

█ We agree with the contention of the respondent that the district court was without jurisdiction of this cause for the reason that the subject matter, under the circumstances, must be the subject of a new and independent action and could not be so litigated in Cause No. 5054. The trial court, in rendering its decision here appealed from, obviously considered that relator's right to the 450 acre feet of water was not dependent upon the ownership of any shares in the respondent company, the carrier and distributor, a question we do not decide, and one which could not be decided in the character of action brought.

The original suit was a statutory action brought under Article 4 of Chapter 77 (Sec. 77-401 et seq.) N.M. Sts. 1941, for the determination of all rights to the use of water in the Cimarron stream system. The following statutes indicate the nature of the suit:

"In any suit for the determination of a right to use the waters of any stream system, all those whose claim to the use of such waters are of record and all other claimants, so far as they can be ascertained, with reasonable diligence, shall be made parties. When any such suit has been filed the court shall, by its order duly entered, direct the state engineer to make or furnish a com-

plete hydrographic survey of such stream system as hereinbefore provided in this article, in order to obtain all data necessary to the determination of the rights involved .........The court in which any suit involving the adjudication of water rights may be properly brought shall have exclusive jurisdiction to hear and determine all questions necessary for the adjudication of all water rights within the stream system involved.........." Sec. 77-406, N.M. Sts. 1941.

"Upon the adjudication of the rights to the use of the waters of a stream system, a certified copy of the decree shall be prepared and filed in the office of the state engineer by the clerk of the court, at the cost of the parties. Such decree shall in every case declare, as to the water right adjudged to each party, the priority, amount, purpose, periods and place of use, and as to water used for irrigation, except as otherwise provided in this article, the specific tracts of land to which it shall be appurtenant, together with such other conditions as may be necessary to define the right and its priority." Sec. 77-408, N.M. Sts. 1941.

The decree of 1929 as it related to the water rights of the village of Springer, determined every question required of the court by the statute and the pleadings in the case. It established relator's water right, its right to the delivery of its water through the respondent's ditches, and the place, purpose and period of use; but the court was not required by the statute to determine, and it did not determine, the con-

tractual relations between the parties hereto regarding the delivery of water. That question was not before the court and was not settled by the decree, and it cannot now be litigated in this new proceeding, and absent necessary parties, under the guise of enforcing the terms of the original decree.

Jurisdiction is often retained for the appropriate enforcement of decrees of courts of equity not self-executing (19 Am. Jur. 289, sec. 420; 30 C.J.S., Equity, p. 1014, § 616) but, ordinarily, when a right has been completely adjudicated and settled and the decree has been entered the court's control of it does not extend beyond the term at which it was rendered. See 19 Am. J. 288, sec. 419; Central Trust Co. v. Grant Locomotive Works, 135 U.S. 207, 10 S.Ct. 736, 34 L.Ed. 97.

The original decree of 1929 was self-executing; or, at least, it may be said that when the respective water rights were then determined and settled, the jurisdiction of the court was exhausted so far as further adjudication of rights was involved. This did not, of course, militate against the authority of the court to punish for contempt, for example, any violation of the ancillary injunction incorporated in the decree. Ames Realty Co. v. Big Indian Mining Co. et al., D.C., 198 F. 367.

Respondent does not deny that courts of equity have the power to retain jurisdiction for the purpose of enforcing its decrees under any circumstances; but it does not admit that a court, acting under a special statute such as this, where specific and limited powers are conferred, has power to "administer" rights under the decree, since that power is, by statute, bestowed upon the State Engineer.

Respondent also urges that in view of the stipulation showing that relator had been constantly getting its share of the 450 acre feet of water since the entry of the 1929 decree, nothing is left in the case except the question whether being the holder of stock in respondent company gives relator an additional water right, and that this is wholly outside the issues before the court and litigated in the original cause herein, and thus cannot be litigated now as was attempted. Likewise, because unnecessary, we express no opinion upon this point.

A mere reading of the statute in question, respondent urges, shows that the State Engineer is given exclusive power with reference to administration and disposition of water under orders of the court adjudicating the water rights themselves. While that appraisal bears many earmarks of soundness, we find it unnecessary here to pass upon the question since it is clear and undisputed that whatever jurisdiction the trial court undertook to, or could, retain under the 1929 decree that it subsequently, in 1932, renounced and surrendered. If it had jurisdiction to so renounce and surrender and the order sufficiently shows such disposition of the cause, as we hold it does, we are brought to the narrow question of jurisdiction, by which this case may be disposed of.

The decree of 1932, by which the district court renounced and surrendered further jurisdiction of cause No. 5054, in part reads: "Does hereby finally and permanently renounce and surrender all jurisdiction in this cause retained by the court in its final judgment and decree filed herein on the 21st day of December 192 * * * and does hereby * * * finally and permanently surrender and commit the supervision of the administration of said decree * * * to the state engineer * * *."

The contention of respondent boils down to this: It is not disputed that the district court has jurisdiction to adjudicate all water rights, but urges that the decree of 1929 was final and could not be re-examined; and that the issues injected under the petition last filed and which resulted in the judgment and decree appealed from, in any event, went far outside the issues involved in the original water right adjudication suit—that this latter suit deals with an administrative problem involving rights of parties not theretofore before the court in the earlier proceeding, and involves issues clearly not present in the original suit. And, that both the order of 1932 renouncing and surrendering jurisdiction, and the statute making the state engineer the administrative officer in such circumstances, would deny relator the relief the decree here appealed from erroneously undertook to grant.

Many of the facts stipulated by the parties have no appropriate reference to the questions involved in this suit, that is, the right to enforce the delivery of the water claimed. This present suit might be said to be an attempt to re-litigate the question of priority and allotment fully settled by the original decree. At least the relator's claim to priority of 1887, for example, is denied by the respondent, and the stipulation of facts would call for a construction of this part of the original decree, if the court ever had jurisdiction in such a proceeding to determine and enforce the contractual relations between the parties hereto.

The district court will not construe a decree in the absence of the assertion of some claim or right to be litigated in a proceeding which the court has jurisdiction to determine, and in which the questioned meaning bears upon the question to be determined. No rule is, perhaps, better established. Eureka Fire Hose Co. v. Eureka Rubber Mfg. Co., 72 N.J.Eq. 555, 65 A. 870.

Relator cannot have the relief here sought; if not for the reasons assigned and argued by respondent and noticed by us, certainly it would be for the reason upon which this opinion rests, that the court in cause No. 5054 had fully renounced and surrendered jurisdiction to adjudicate any rights therein, if, in fact, it could, after the decree of 1929, have retained jurisdiction to try and determine such issues as these now presented by relator's petition.

The judgment of the district court will be reversed and the cause remanded to the district court with instructions to dismiss the proceeding, reserving to the parties all rights here involved for determination, if

they so elect, in some appropriate independent action.

It is so ordered.

BICKLEY and THREET, JJ., and AL-BERT R. KOOL and LUIS E. ARMIJO, District Judges, concur.